UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

TROY RICHARDSON,

    Plaintiff,

        v.                                  Civil Action No.  10-2049 (JEB)

TODD M. KORSON,

    Defendant.

## MEMORANDUM OPINION

       In November 2010, Plaintiff Troy Richardson filed this suit against Todd Korson and Darnette Bennett, officers of the Metropolitan Police Department, alleging that they were negligent (Count I) and violated his civil rights (Count II) in handcuffing him too tightly and then dragging him to a patrol car during an arrest.  Korson previously moved to dismiss both counts.  The Court granted the motion in part, narrowing the negligence claim to one for tight handcuffs and the 42 U.S.C. § 1983 claim to a Fourth Amendment violation.  See ECF No. 12 (August 26, 2011, Memorandum Opinion & Order).  Bennett was never served, and the Court thus dismissed all claims against her in a Minute Order on October 6, 2011.

       Following fact and expert discovery, Korson now moves for partial summary judgment on the negligence claim alone.  He maintains that this count fails as a matter of law because Plaintiff lacks sufficient expert testimony to prove that the manner in which he was handcuffed breached a national standard of care.  Defendant further moves to strike Plaintiff's supplemental expert report – which provides testimony on the standard – as untimely and substantially prejudicial, arguing it violates the rules governing expert discovery.  While the Court agrees that Plaintiff has failed to comply with these rules, resulting in disruption to the efficient management

1

of the case, the Court finds that such failure is not so prejudicial as to justify preclusion of the expert report. The Court will thus reluctantly permit the untimely supplemental report, which also means summary judgment is premature. This ruling, however, is contingent upon Plaintiff's expert being made available for a deposition at Plaintiff's expense. Defendant will also be permitted to submit his own expert report and may renew this Motion following additional, limited discovery.

**I.     Background**

On January 30, 2008, members of an MPD recruit class observed Richardson slap his daughter. See Mot., Exh. 1 (Statement of Material Facts Not in Dispute (SMF)), ¶ 2; Opp., Exh. 1 (Plaintiff's Answers to Defendant's First Set of Interrogatories), ¶ 10. Officer Korson was on patrol and received a call for assistance, arriving at the scene shortly thereafter. See SMF, ¶¶ 3-4. Richardson had already been placed in handcuffs by another officer when Korson arrived. See id., ¶ 4; Pl. Ans. to Int., ¶ 7. Korson and Richardson provide differing accounts of the events that transpired next, as Korson attempted to place Richardson in an MPD vehicle for transport to the police station. Korson states that he gave Richardson numerous warnings that he had to come with him, and when Richardson refused to cooperate, Korson was forced to "put his hands under [Richardson's] arm pits and lift[] [him] to his feet." SMF, ¶¶ 6-9. Korson then "took hold of [Richardson's] upper arm and walked Plaintiff to his MPD transport vehicle, which was about a car length away." Id., ¶ 10.

Richardson, in contrast, describes Korson approaching him in "an aggressive and threatening manner." Pl. Ans. to Int., ¶ 7. Korson then grabbed Richardson's arm, causing him to fall to the ground in pain. See id. Richardson was then dragged "about five feet on the rough pavement to the rear of the first recruiting van. [Korson] slammed [him] face down on the

concrete and then placed his knee directly into the center of [Richardson's] back." Id. Korson then placed a second pair of handcuffs on Richardson's wrists and "excessively tightened them," before dragging Richardson "an additional twenty-five to thirty feet before lifting [him] into the back of [Korson's] patrol car." Id. Richardson claims his wrists were "numb with pain" from the handcuffs. Id.

Korson acknowledges that he was aware of Richardson's complaints regarding the tightness of the handcuffs, but states that he "checked the tightness of the handcuffs by placing his pinky finger between the handcuffs and Plaintiff's wrist." SMF, ¶¶ 12-13. Korson maintains that the discomfort Richardson was experiencing was due to Richardson's twisting of his wrist, "which caused the handcuffs to rub against Plaintiff's wrist bone." Id., ¶ 14. Richardson was subsequently taken to the hospital for the "excruciating, unbearable pain" he was experiencing. See Pl. Ans. to Int., ¶ 7. After an examination at the hospital, Richardson was taken back to the police station. See id.

Richardson subsequently filed suit in the Superior Court of the District of Columbia asserting a negligence claim based on the dragging conduct and the tight handcuffs (Count I) and a Section 1983 claim based on violations of the Fourth and Fifth Amendments (Count II). See Compl., ¶¶ 7-13. This Court previously dismissed Count I with respect to the dragging conduct and Count II with respect to the Fifth Amendment. See August 26, 2011, Memorandum Opinion. Plaintiff's negligence claim based on the tight handcuffs and his § 1983 claim based on the Fourth Amendment were allowed to proceed. See id.

The Court then issued a Scheduling Order on October 6, 2011, setting forth deadlines for expert and fact discovery. See ECF No. 15 (Scheduling Order). Over the months that followed, the parties sought to extend the discovery deadlines, which joint requests the Court granted. See

January 10, 2012, Minute Order granting Consent Motion for Extension of Time to Complete Discovery; February 29, 2012, Minute Order granting Consent Motion to Modify the Scheduling Order; June 7, 2012, Minute Order granting Consent Motion for Extension of Time to Complete Discovery; July 2, 2012, Minute Order extending deadline for discovery. Following these extensions, the parties appeared for a status conference on August 31, 2012, to set a schedule for briefing on summary judgment. Defendant consequently filed this Motion, which the Court now considers.

**II.    Analysis**

Defendant moves for summary judgment solely on Count I, claiming he is entitled to judgment because Plaintiff lacks sufficient expert testimony to prove that Korson negligently applied handcuffs during Richardson's arrest. See Mot. at 8-11. He further moves to strike Plaintiff's supplemental expert report as untimely and substantially prejudicial to his defense. See id. at 11-15. Richardson counters that expert testimony is not required with respect to the appropriate manner in which handcuffs are applied, and that even if such testimony were required, it has been established through the expert report of Robert Klotz and the addendum thereto. See Opp. at 3-7. He further contends that the Court should not strike Klotz's supplemental report as untimely because its consideration will not unduly prejudice Korson, and dismissing the claim would be "too draconian a penalty to impose for plaintiff's counsel's oversight in this regard." See id. at 8; see also id. at 7-11.

The Court will first address Korson's argument regarding the necessity of expert testimony on the applicable standard of care. Determining that such testimony is required, the Court will next assess whether the untimely supplemental expert report may be considered.

4

A.      Standard of Care

Korson argues that Richardson must submit expert testimony on the appropriate manner in which handcuffs are applied to establish the standard of care for his negligence claim. See Mot. at 8-9.  Richardson disputes this, maintaining that expert testimony is not required here because the specific locking mechanism of the particular handcuffs that were used (double-locking handcuffs) can be understood by a lay jury without illumination of any technical aspects. See Opp. at 3-5.  The Court disagrees.  Jurors lack familiarity with the appropriate implementation of handcuffs and how they should be adjusted upon complaints by arrested individuals, regardless of the specific locking mechanism used.  Expert testimony to establish the standard of care for Count I is thus required.

"'A plaintiff must put on expert testimony to establish what the standard of care is if the subject in question is so distinctly related to some science, profession or occupation as to be beyond the ken of the average layperson.'"  Briggs v. Washington Metro. Area Transit Auth., 481 F.3d 839, 845 (D.C. Cir. 2007) (quoting Dist. of Columbia v. Arnold & Porter, 756 A.2d 427, 433 (D.C. 2000)).  No expert testimony is needed, however, "'if the subject matter is within the realm of common knowledge and everyday experience.'"  Briggs, 481 F.3d at 349 (quoting Hill v. Metro. African Methodist Episcopal Church, 779 A.2d 906, 908 (D.C. 2001)).

Faced with very similar facts in Tillman v. Washington Metro. Area Transit Auth., 695 A.2d 94 (D.C. 1997), the D.C. Court of Appeals affirmed the trial court's determination that a plaintiff was required to present expert testimony to establish the standard of care where he had claimed police officers were negligent in handcuffing him.  The court noted that the plaintiff

> offered no evidence of police department regulations governing the use of handcuffs, and no expert testimony demonstrating in any fashion that the officers [*sic*] conduct had been so excessive that it amounted to a common law tort and/or a violation of § 1983.  A

>jury would have to engage in considerable speculation to find for Tillman on this claim without any evidence of the applicable standards.

Id. at 97.

The court concluded that jurors are not "so familiar with the appropriate level of tightness of handcuffs and with the appropriate response of police officers to complaints by arrested individuals concerning the tightness of handcuffs, that the jury here reasonably could find for the plaintiff in the absence of expert testimony or of similar evidence establishing the standard of care." Id.; see also Dormu v. Dist. of Columbia, 795 F. Supp. 2d 7, 28-31 (D.D.C. 2011) (discussing evidence required to establish standard of care where claim involved negligent use of handcuffs).  Neither of these cases hinged on the specific type of handcuff used, and the Court does not find that distinction meaningful here.

Plaintiff, therefore, must present evidence on the standard of care to survive summary judgment on his negligence claim.

### B. Untimely Expert Report

Defendant next moves to strike Plaintiff's untimely supplemental expert report in its entirety as unduly prejudicial. See Mot. at 11-15.  Korson maintains he was "substantially prejudiced" by Plaintiff's "late and untimely submission," where "[b]ased on the initial report, Officer Korson, through the Office of the Attorney General, decided not to depose Mr. Klotz. Officer Korson was further prejudiced because no expert was retained on behalf of Officer Korson." Id. at 14.  Without the supplemental report, Richardson would lack the required standard-of-care evidence for his negligence claim.  The stakes are thus high for the supplemental report.  If the Court prohibits its submission, Count I will be dismissed; otherwise, it may proceed.

Plaintiff does not dispute that his submission is untimely or that its late disclosure has prejudiced Korson. Instead, he argues that precluding the evidence would be "too draconian a penalty to impose for plaintiff's counsel's oversight," where sufficient time remains to "cure any prejudice to the defendants brought about by the elucidation of Plaintiffs' opinion." Opp. at 8. The failure of Plaintiff's counsel and an experienced, paid expert to timely file a submission setting forth the appropriate standard of care here is troubling, given the centrality of the issue to Richardson's claim and the numerous extensions to the discovery schedule that this Court has authorized. Because the prejudice to Korson will not be great, however, the Court will permit the re-opening of discovery for the limited purpose of permitting Korson to depose Plaintiff's expert and designate an expert of his own, if he wishes to do so. To palliate the ruling in part, Plaintiff will bear the expense of his expert's deposition.

Under Federal Rule of Civil Procedure 26(a)(2)(B), expert witnesses must provide the Court with a written report containing, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them." "The purpose of Rule 26(a)(2) is to prevent unfair surprise at trial and to permit the opposing party to prepare rebuttal reports, to depose the expert in advance of trial, and to prepare for depositions and cross-examinations at trial." Minebea Co., Ltd. v. Papst, 231 F.R.D. 3, 5-6 (D.D.C. 2005); see also Sandata Tech., Inc. v. Infocrossing, Inc., No. 05-9546, 2007 WL 4157163, at *4 (S.D.N.Y. Nov. 16, 2007) (Rule 26 requirements designed so "opposing party knows exactly what she is facing and can decide whether to take the deposition of the expert and to prepare for cross-examination and rebuttal. When the expert supplements her report by addressing a new matter after discovery has ended, the very purpose of the rule is nullified.") (citing Coles v. Perry, 217 F.R.D. 1, 4 (D.D.C. 2003)). Rule 37(b)(2)(A)(ii) permits a court to prohibit a party, for failing to obey a discovery order,

from introducing designated matters into evidence. Rule 37(c)(1) further provides for the exclusion at trial of any information not disclosed pursuant to Rule 26(a), unless the failure to disclose is harmless or if there was substantial justification for such failure.

The expert report challenged here – Plaintiff's so-called "Addendum," dated October 3, 2012 – was submitted almost seven weeks after discovery closed on August 16. See Mot., Exh. 4. Plaintiff, moreover, did not seek leave of the Court to submit the untimely report – despite the clear directions set forth in the Court's Scheduling Order requiring the parties to seek leave to extend deadlines. See October 6, 2011, Scheduling Order [ECF No. 15], ¶ 9.

Plaintiff describes the Addendum as "provid[ing] further detail for the basis of [the expert's] opinion concerning the national standard of care." Opp. at 7. The specific sources referenced in the Addendum – and absent in the original report – include:

- "the Constitution";

- "decisions by the Supreme Court of the United States";

- "the Standards for Law Enforcement Agencies by the Commission on Accreditation of Law Enforcement Agencies (CALEA)";

- "decisions by local and federal court of appeals decisions and District of Columbia Municipal Regulation enacted by the D.C. City Council";

- "a book titled, Police Use of Force, A Line Officer's Guide, by Gillespie, Hart and Boran published in 1998";

- a book titled "ISC Handcuffing Certification by Gardner, Knight, Mader, and Sypniewski, published in 1997"; and

- the expert's "own knowledge of procedures in a number of police departments in this country regarding handcuffing procedures, in various departments in Maryland, Virginia, in Philadelphia, PA, New York City, NY, among others."

Addendum at 1-2. Klotz's original report, dated April 5, 2012, made no reference to the sources upon which he relied, merely stating in conclusory fashion that the use of force was "contrary to

both national and local police standards." See Klotz Report at 4.  Defendant, in fact, elected not to depose Klotz – and not to designate its own expert – based on the contents of the original report.  See Mot. at 14.

Defendant challenges the untimely expert report on two fronts.  First, he argues that the Addendum is not a "supplemental report" under Rule 26(e) because "all of the information included in the supplement report was known to Mr. Klotz at the time he submitted his initial report.  The supplemental report is not based upon, and indeed does not discuss, any new information that was not available to Mr. Klotz on April 5, 2012, when he submitted his initial report." Mot. at 13.

Rule 26(e) provides a limited exception to the deadlines provided under Rule 26(a)(2) by requiring an expert witness to supplement his report if the report is "incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  This rule "permits supplemental reports only for the narrow purpose of correcting inaccuracies or adding information that was not available at the time of the initial report," Minebea, 231 F.R.D. at 6 (citing Keener v. United States, 181 F.R.D. 639, 640 (D. Mont. 1998)), and "'does not grant a license to supplement a previously filed expert report because a party wants to.'" Estate of Gaither ex rel. Gaither v. District of Columbia, No. 03-1458, 2008 WL 5869876, at *3 (D.D.C. Oct. 23, 2008) (quoting Keener, 181 F.R.D. at 640); see also SEC v. Nacchio, No. 05-480, 2008 WL 4587240, at *3 n.3  (D. Colo. Oct. 15, 2008) (to "construe supplementation to apply whenever a party wants to bolster or submit additional expert opinions would reek [*sic*] havoc in docket control and amount to unlimited expert opinion preparation") (internal citation omitted).

It is beyond dispute that the sources disclosed in the Addendum were available to Plaintiff's expert at the time of the original report – and the Addendum acknowledges as much. See Supplemental Report at 1 ("In reviewing my April report, I have noted that while I spoke to national and local standards in my opinions, I had neglected to specify in my attachment #4, what were these standards"). In at least one decision by a court in this District, however, supplementation of an expert report with "references, not new opinion" was within the scope of Rule 26, as the court reasoned that these additions did not "blindside defendants with new information." Dormu, 795 F. Supp. 2d at 28 n.16. The additions here, however, are not so insignificant; indeed, the added disclosures here provide the entire basis for the expert's opinion. It is thus doubtful that the substance of the supplemental report complies with Rule 26(e). Technical compliance with the rule's limitations, nevertheless, has not always proved fatal, since courts have instead applied a more flexible approach, focusing on the prejudicial effect of the late disclosure. See, e.g., Estate of Gaither, 2008 WL 5869876, at *3 (recognizing challenged expert report did not fit within narrow Rule 26(e) exception, but nonetheless permitting it where sufficient time in schedule to cure prejudice of late filing).

Second, Korson contends that even if the Addendum were a proper supplemental report, it should nonetheless be excluded as unduly prejudicial. See Mot. at 14. Defendant was prejudiced by the last-minute filing of the Addendum inasmuch as he never deposed Klotz or obtained his own expert. See Antoine v. J.P. Morgan Chase Bank, No. 08-615, 2009 WL 5842054, at *3 (D.D.C. Aug. 13, 2009) (untimely expert report harmed party by depriving its "'counsel of the information they were entitled to in order to make a fully informed determination regarding whether to, and if so how to, depose [Plaintiff's] experts'") (quoting Scott v. Dist. of Columbia, 246 F.R.D. 49, 52 (D.D.C. 2007)).

Because preclusion of evidence is an extreme sanction, however, a court "'must consider less drastic responses'" before imposing this sanction. See United States v. City of New York, No. 07-2067, 2010 U.S. Dist. LEXIS 72343, at *9 (E.D.N.Y. July 19, 2010) (quoting Outley v. New York, 837 F.2d 587, 591 (2d. Cir. 1988)). In Albert v. Warner-Lambert Co., No. 99-11700, 2002 WL 745822 (D. Mass. April 24, 2002), a district court in Massachusetts facing the same situation held that the circumstances counseled a "lighter sanction than preclusion . . . even in cases where a party cannot demonstrate that its failure to comply with an expert disclosure deadline was justified or harmless." Id. at *1. The court acknowledged the prejudice the plaintiff's untimely expert disclosures had on the defendant, but nonetheless adopted a more measured approach where trial had not yet been set and preclusion of an untimely expert report "would be tantamount to a death sentence" to the plaintiff's claims.

Where there is sufficient time to provide the prejudiced party with an opportunity to cure the prejudice of the untimely report, a court may permit submission of the report. See Estate of Gaither, 2008 WL 5869876, at *3. In Dormu, for example, a court in this District held that the harm to the party seeking to strike an untimely expert report did "not justify striking the supplemental affidavit," where "[a]ny harm they do experience, . . . can be minimized by allowing defendants to depose the expert if they so choose." 795 F. Supp. 2d at 28 n.16 (citing Albert, 2002 WL 745822, at *1); see also Antoine, 2009 WL 5842054, at *3 (defendant afforded a "full and fair opportunity to take discovery related [to] Plaintiff's expert and provide any rebuttal witnesses so that Defendant will not be prejudiced during trial" in effort to cure harms of untimely expert report).

Here, no trial date has yet been set. While it is certainly disruptive to the efficient management of this case to re-open discovery – especially where Plaintiff and his expert had

countless opportunities to remedy deficiencies in the report during the extended period for discovery – the Court finds that the harm to Plaintiff of precluding the report outweighs this disruption. Compare DAG Enter., Inc. v. Exxonmobil Corp., No. 00-0182, 2007 WL 4294317, at *1 (allowing untimely expert submission where trial had not yet been set and defendants had sufficient time to depose expert and to prepare their own experts and excluding untimely submission "would totally undermine the viability of the plaintiffs' case") with Keener, 181 F.R.D. at 642 (excluding expert's untimely disclosures given "interest in expeditious resolution of [the] litigation" and court's need to "manage its docket"). Additionally, because the additional discovery the Court is permitting is very narrow, the disruption here can be minimized. Defendant, it should be noted, points to no prejudice from the Court's limited reopening of discovery. If he had, the outcome might have been different.

    In permitting Plaintiff's supplemental report to be considered here, the Court admonishes Plaintiff's counsel and expert for their dilatory behavior. This is particularly concerning where it appears that this is not the first time such incomplete initial submissions have been made by this expert. Indeed, very recently, in a court in this District, Judge Henry H. Kennedy was faced with an almost identical issue involving untimely submissions by Klotz. See Dormu, 795 F. Supp. 2d at 28-30. In that case, the original affidavit he submitted in support of the plaintiff's negligence claim – like the original report here – failed to reference the prevailing national standards with respect to police handcuffing. See id. Judge Kennedy ultimately permitted the plaintiff to submit a supplemental report from Klotz including the references, finding that the harm to the defendants could be minimized by permitting them to depose Klotz. See id. at 28-29. While Plaintiff's untimely submission here does not appear to be in bad faith, further untimely submissions by this expert – whether due to incompetence or sloppiness – will not be tolerated.

It is within the Court's discretion to impose sanctions – *e.g.*, the imposition of costs – on a party who has failed to comply with the rules governing discovery.  See Albert, 2002 WL 745822, at *1 (sanctioning untimely expert filing by requiring party to bear costs of expert's deposition).  Finding similar sanctions appropriate here to mitigate the prejudice that Plaintiff's untimely expert filing has on Defendant, the Court will consequently order that the costs of the Klotz deposition shall be borne by Plaintiff.

### III.    Conclusion

For the foregoing reasons, the Court will deny Defendant's Motion to Strike Plaintiff's supplemental expert report and reopen discovery for the limited purposes set forth above and will deny Defendant's Motion for Partial Summary Judgment without prejudice, permitting Defendant to renew this Motion upon the conclusion of discovery.  A separate Order consistent with this Opinion will be issued this day.

**SO ORDERED**.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  November 27, 2012